IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FirstMerit Bank, N.A., <br><br> Plaintiff, <br><br> v. <br><br> BMO Harris Bank, and Michelle Edmonds f/k/a Michelle Cavin <br><br> Defendants. | No. |

## COMPLAINT

Plaintiff, FirstMerit Bank, N.A. ("FirstMerit"), by and through its attorneys, Cohon Raizes & Regal, LLP, files its Complaint against Defendants BMO Harris Bank ("BMO Harris"), and Michelle Edmonds f/k/a Michelle Cavin ("Edmonds"), stating in support as follows:

## JURISDICTION AND VENUE

1. This action arises out of the fraudulent notarization of certain forbearance agreements by Edmonds, in her capacity as branch manager of BMO Harris. As set forth below, Edmonds, in her capacity as branch manager of BMO Harris, notarized the signatures appearing on certain forbearance agreements, even though the signatories did not appear before her to acknowledge their signatures.

2. Jurisdiction in this Court is based upon diversity of citizenship. 28 U.S.C. § 1332. There is complete diversity among the parties, and the matters in controversy, exclusive of interest and costs, exceed the sum of $75,000.00.

3. FirstMerit is a citizen of the State of Ohio because it is a national association chartered under the laws of the State of Ohio, and it maintains its principal place of business and headquarters in the State of Ohio.

4. Upon information and belief, BMO Harris is a citizen of the State of Illinois because it is a national association chartered under the laws of the State of Illinois and it maintains its principal place of business and headquarters in the State of Illinois.

5. Upon information and belief, Edmonds is a resident of Chicago, Illinois.

6. Venue is proper in this District because the mortgages at issue are secured by property located in this District, and a substantial portion of the acts and omissions giving rise to the claim occurred here. 18 U.S.C. § 1391.

## COMMON FACTUAL ALLEGATIONS

7. FirstMerit is the holder of six loans originated by Midwest Bank and Trust Company ("Midwest"). The loans were made to various entities that were owned and controlled by one or more of Sam Menetti ("Sam"), Hodo Menetti ("Hodo"), Pullump Menetti ("Pullump"), Burim Menetti ("Burim"), and Tefik Menetti ("Tefik") (Sam, Hodo, Pullump, Burim and Tefik are collectively referred to as the "Menettis") and were secured by certain mortgages on various properties.

8. FirstMerit acquired the following loans, including all related loan documents, when it acquired certain of the assets of Midwest Bank and Trust ("Midwest") from the FDIC on May 14, 2010 (collectively the "Loans"):

   a. Loan in the principal amount of $5,600,000.00, to 7645 North Sheridan, LLC evidenced by, among other loan documents, a Mortgage Note dated December 15, 2008, payable to Midwest.

2

      b. Loan in the principal amount of $3,700,000.00, to 4526 North Sheridan, LLC, evidenced by, among other loan documents, that certain Promissory Note dated May 22, 2008, payable to Midwest.

      c. Loan in the principal amount of $2,910,000.00, to 6770 N. Clark, LLC, evidenced by, among other loan documents, a Promissory Note dated May 22, 2008, payable to Midwest.

      d. Loan in the principal amount of $6,956,000.00, to Lawrence House, LLC, evidenced by, among other loan documents, that certain Promissory Note dated May 28, 2008, payable to Midwest.

      e. Loan in the principal amount of $603,000.00, to First S & H Management, LLC, evidenced by, among other loan documents, that certain Promissory Note dated February 4, 2008, payable to Midwest.

      f. Loan in the principal amount of $272,000.00 to the First S & H Management, LLC, evidenced by, among other loan documents, certain Promissory Note executed by the S&H Borrower dated September 3, 2008, payable to Midwest.

9. As a result of the occurrence of certain defaults under the Loans, on January 16, 2012, FirstMerit filed two actions entitled *FirstMerit Bank, N.A., et al vs. 2200 North Ashland, LLC, et al.*, No. 1:12-cv-00572 (the "Foreclosure Litigation"), and *FirstMerit Bank, N.A., et al vs. First S & H Management, LLC, et al.*, No. 1:12-cv-00580 (the "S&H Litigation") both in the U.S. District Court for the Northern District of Illinois, seeking to enforce the Loans.

10. Subsequently, FirstMerit and the borrowers engaged in settlement discussions which resulted in two forbearance agreements dated August 2, 2012 (the "Forbearance Agreements"), pursuant to which FirstMerit agreed to forbear from exercising certain of its rights and remedies under the loan documents, subject to and upon the terms and conditions set forth therein. A true and accurate copies of the Forbearance Agreements are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.

11. Pursuant to the Forbearance Agreements, borrowers and guarantors represented and affirmed that by virtue of the Cross-Collateralization and Cross-Default Agreement dated

3

August 19, 2011 (the "2011 Modification Agreement"), each of the Loans were cross-collateralized and cross-defaulted.

12. Pursuant to the Forbearance Agreements, borrowers and guarantors represented and affirmed that each of the Loans were in default and admitted that borrowers had no defenses to the enforcement of the notes evidencing the Loans.

13. Pursuant to the Forbearance Agreements, borrowers and guarantors represented and affirmed that a certain mortgage dated May 22, 2008, recorded against property commonly known as 2200 N. Ashland Avenue, Chicago, Illinois (the "Ashland Mortgage"), was cross-collaterialized and was security for each of the Loans.

14. By executing the Forbearance Agreements, borrowers and guarantors represented and affirmed that each of them had agreed to the terms of the 2011 Modification Agreement.

15. Each of the Menettis' individual signatures appears on the Forbearance Agreements, both as owners of the various borrowers and as guarantors.

16. FirstMerit would not have agreed to forbear its rights, but for the representation and affirmation of each of the borrowers and guarantors that the Loans were cross-collaterialized.

17. Pursuant to the Forbearance Agreements, FirstMerit dismissed the Foreclosure Litigation and the S&H Litigation without prejudice.

18. Thereafter as a result of certain defaults under the Forbearance Agreements, FirstMerit reinstated the Foreclosure Litigation, including certain claims initially filed in the S&H Litigation, by filing its Motion for Leave to File Second Amended Verified Complaint on January 15, 2013.

19. Tefik subsequently filed an answer and affirmative defenses in which he denies signing the 2011 Modification Agreement and denied signing the Forbearance Agreements.

20. Tefik disputes that the Ashland Mortgage secures the Loans, asserting that his signature on the 2011 Modification Agreement in which the Loans were cross-collateralized, cross-defaulted was forged.

21. Tefik further asserts that his signature on the Forbearance Agreements, in which the borrowers and guarantors affirmed the 2011 Modification Agreement, was also forged.

22. Although Burim has filed an answer and affirmative defenses admitting the parties entered into the Forbearance Agreements, Burim later testified at his deposition that he did not sign the Forbearance Agreements and that his purported signatures on those agreements are forgeries.

23. As a result of the claimed forgeries on the Forbearance Agreements, FirstMerit is not be able to recover the full amounts due and owing under the notes.

## COUNT I – NOTARY MISCONDUCT
## AGAINST DEFENDANT MICHELLE EDMONDS

24. FirstMerit restates, re-alleges and incorporates by reference Paragraphs 1 through 23 of this Complaint as Paragraph 24.

25. Edmonds has been a licensed notary public in the Illinois since 2003.

26. In August 2012, Edmonds was a branch manager at BMO Harris located at 2196 North Elston, Chicago, Illinois ("Elston Branch").

27. The Menettis were customers of BMO Harris and frequently came into the Elston Branch.

28. Through her position as branch manager Edmonds at the time knew and could identify Sam, Hodo, Pullump, and Burim.

29. On information and belief, on August 1, 2012, Pullump came to the Elston Branch and asked Edmonds to notarize the Forbearance Agreements.

30. On August 1, 2012, Edmonds notarized the Forebearance Agreements which were purportedly signed by, among others, Tefik and Burim.

31. Tefik did not appear before Edmonds at the time she notarized the Forbearance Agreements; Edmonds did not witness Tefik sign the Forbearance Agreements; and Tefik did not acknowledge to Edmonds that Tefik signed and delivered the Forbearance Agreements.

32. Burim also did not appear before Edmonds at the time she notarized the Forbearance Agreements; Edmonds did not witness Burim sign the Forbearance Agreements; and Burim did not acknowledge to Edmonds that Burim signed and delivered the Forbearance Agreements.

33. Edmonds signed certifications stating that Tefik and Burim each "*appeared before me this day in person and acknowledged that he signed and delivered* said instrument as his own free and voluntary act, and as the free and voluntary act of such companies, for the uses and purposes therein set forth" (Exh. 1, p. 21; Exh. 2, p. 11)(emphasis added).

34. Edmonds knew that her certifications on the Forbearance Agreements were false and that neither Tefik nor Burim appeared before her and that neither Tefik nor Burim acknowledged that they had signed and delivered the documents.

35. The Illinois Notary Public Act provides that a notary public and the surety on the notary's bond are liable to persons involved for all damages caused by the notary's official misconduct. 5 ILCS 312/7-101.

36. Section 7-104 provides that a notary commits official misconduct when he or she engages in a knowing, reckless, or intentional wrongful exercise of a power or wrongful

6

performance of a duty, and it states that the term "wrongful" means "unauthorized, unlawful, abusive, negligent, reckless, or injurious." 5 ILCS 312/7-104.

37. Edmonds' notarizations of the Forbearance Agreements are false and constitute the wrongful performance of a duty under the Illinois Notary Public Act.

38. FirstMerit relied upon Edmonds' notarizations of the Forbearance Agreements when FirstMerit agreed to forbear its rights under the credit agreements.

39. FirstMerit has been damaged by Edmonds' notarial misconduct.

WHEREFORE, Plaintiff, FirstMerit Bank, N.A., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Michelle Edmond on Count I as follows:

A. Damages in an amount in excess of $21,397,410.72, plus all pre-judgment interest accruing under the Loans between May 15, 2015, and the date of judgment;

B. Costs of this suit and attorneys' fees; and

C. Any such further relief as justice and equity may require.

## COUNT II – NOTARY MISCONDUCT
## AGAINST DEFENDANT BMO HARRIS

40. FirstMerit restates, re-alleges and incorporates by reference Paragraphs 1 through 39 of this Complaint as Paragraph 40.

41. In August 2012, Edmonds was a branch manager at BMO Harris' Elston Branch.

42. In her role as Branch Manager, Edmonds was responsible for managing the employees at the Elston Branch and was responsible for operations which included compliance, sales, and training.

43. In August of 2012, BMO Harris provided notary services to its customers.

44. Borrowers and Guarantors were customers of BMO Harris and frequently came into the Elston Branch.

45. On information and belief, on August 1, 2012, Pullump Menetti came into the branch and asked Edmonds to notarize the Forbearance Agreements.

46. Edmonds notarized the Forbearance Agreements which were purportedly signed by, among others, Tefik and Burim.

47. Neither Tefik nor Burim appeared before Edmonds at the time she notarized the Forbearance Agreements, Edmonds did not witness either Tefik or Burim sign the Forbearance Agreements, and neither Tefik nor Burim acknowledged to Edmonds that they signed and delivered the Forbearance Agreements.

48. Edmonds signed certifications that both Tefik and Burim appeared before her on August 1, 2012 and that both Tefik and Burim acknowledged that they had signed and delivered the Forbearance Agreements. (Exh. 1, p. 21; Exh. 2, p.11).

49. Section 7-102 provides that the employer of a notary public is liable to the persons involved for all damages caused by the notary's official misconduct if (1) the notary was acting within the scope of his employment at the time she engaged in the official misconduct and (2) the employer consented to the notary's official misconduct. 5 ILCS 312/7-102.

50. In notarizing the Forbearance Agreements, Edmonds was acting within the scope of her employment with BMO Harris.

51. In notarizing the forbearance agreement, Edmonds was acting for the benefit of BMO Harris, which provides notarization services to its customers.

52. In her capacity as branch manager, Edmonds knew that her certifications on the Forbearance Agreements were false and Edmonds knew that neither Tefik nor Burim appeared before her and that neither Tefik or Burim acknowledged signature and delivery of the documents.

53. Because Edmonds was not only an agent but a branch manager for BMO Harris, her knowledge of the false certifications to the Forbearance Agreements is imputed to BMO Harris. Thus, BMO Harris knew of and consented to Edmonds' misconduct.

54. FirstMerit relied upon Edmonds' notarization and certification of the Forbearance Agreements when FirstMerit agreed to forbear its rights under the credit agreements.

55. FirstMerit has been damaged by Edmonds' notarial misconduct.

56. BMO Harris is liable to FirstMerit for the full amount of damages suffered by FirstMerit because (1) Edmonds was acting within the scope of her employment in notarizing the forbearance agreements; and (2) BMO Harris consented to Edmonds' official misconduct.

WHEREFORE, Plaintiff, FirstMerit Bank, N.A., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant BMO Harris Bank on Count II as follows:

   A. Damages in an amount in excess of $21,397,410.72, plus all pre-judgment interest accruing under the Loans between May 15, 2015, and the date of judgment;

   B. Costs of this suit and attorneys' fees; and

   C. Any such further relief as justice and equity may require.

### COUNT III – CONSPIRACY TO DEFRAUD AGAINST DEFENDANT MICHELLE EDMONDS

57. FirstMerit restates, re-alleges and incorporates by reference Paragraphs 1 through 56 of this Complaint as Paragraph 57.

58. On information and belief, in August, 2012, Sam and Pullump were not able to obtain Tefik and Burim's signatures on the Forbearance Agreements.

59. Sam and Pullump formed a conspiracy with Edmonds to defraud FirstMerit Bank. Pursuant to such conspiracy Sam and Pullump would cause the signatures of Tefik and Burim to be forged on the Forbearance Agreements and Edmonds agreed to notarize the forged signatures.

60. On information and belief, either Sam or Pullump caused Tefik and Burim's signatures to be forged on the Forbearance Agreements.

61. Thereafter, on information and belief, Pullump took the Forbearance Agreements with the forged signatures to Edmonds at BMO Harris and Edmonds notarized the Forbearance Agreements.

62. Edmonds signed certifications that both Tefik and Burim appeared before her on August 1, 2012 and that both Tefik and Burim acknowledged that they had signed and delivered the Forbearance Agreements. (Exh. 1, p. 21; Exh. 2, p.11).

63. The above certifications in the Forbearance Agreements signed by Edmonds were false.

64. Edmonds, Sam, and Pullump knew the certifications were false.

65. Edmonds, Sam, and Pullump knew FirstMerit would rely upon the notarizations provided by Edmonds and FirstMerit did in fact rely on such notarizations when it agreed to forbear its rights under the loan documents.

66. FirstMerit, as a result, has suffered damages.

WHEREFORE, Plaintiff, FirstMerit Bank, N.A., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Michelle Edmonds, on Count III as follows:

A. Damages in an amount in excess of $21,397,410.72, plus all pre-judgment interest accruing under the Loans between May 15, 2015, and the date of judgment;

B. Punitive damages;

C. Costs of this suit and attorneys' fees; and

D. Any such further relief as justice and equity may require.

## COUNT IV – VICARIOUS LIABILITY FOR FRAUD AGAINST DEFENDANT BMO HARRIS

67. FirstMerit restates, re-alleges and incorporates by reference Paragraphs 1 through 66 of this Complaint as Paragraph 67.

68. In notarizing the Forbearance Agreements, Edmonds was acting within the scope of her employment with BMO Harris.

69. In notarizing the forbearance agreement, Edmonds was acting for the benefit of BMO Harris, which who provides notarization services to its customers.

70. In her capacity as branch manager, Edmonds knew that her certifications on the Forbearance Agreements were false and Edmonds knew that Tefik and Burim did not appear before her and that neither Tefik or Burim had acknowledged that they had signed and delivered the documents.

71. Because Edmonds was not only an agent but a branch manager for BMO Harris, her knowledge of the false certifications to the Forbearance Agreements is imputed to BMO Harris. Thus, BMO Harris knew of and consented to Edmonds' fraudulent conduct.

72. FirstMerit relied upon Edmonds' notarization and certification of the Forbearance Agreements when FirstMerit agreed to forbear its rights under the credit agreements.

73. FirstMerit has been damaged by Edmonds' fraudulent conduct.

74. BMO Harris is liable to FirstMerit for the full amount of damages suffered by FirstMerit because (1) Edmonds was acting within the scope of her employment in notarizing the forbearance agreements; and (2) BMO Harris consented to Edmonds' fraudulent conduct.

75. FirstMerit, as a result, has suffered damages.

WHEREFORE, Plaintiff, FirstMerit Bank, N.A., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant BMO Harris, on Count IV as follows:

A. Damages in an amount in excess of $21,397,410.72, plus all pre-judgment interest accruing under the Loans between May 15, 2015, and the date of judgment;

B. Punitive damages;

C. Costs of this suit and attorneys' fees; and

D. Any such further relief as justice and equity may require.

Respectfully submitted,

FirstMerit Bank, N.A.,

By: /s/Amy E. Daleo
     One of Its Attorneys

Cornelius P. Brown (ARDC #0312355)
J. Michael Williams (ARDC # 6194265)
Amy E. Daleo (ARDC #6281091)
Cohon Raizes & Regal LLP
208 S. LaSalle Street, suite 1860
Chicago, Illinois 60604
(312) 726-2252